NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2162
_____

IN RE: JAMES HARTMAN,
Debtor


JAMES HARTMAN,
Appellant

v.

WELLS FARGO BANK NA, d/b/a America's Servicing Company;
US BANK NA, as Trutee for Residential Asset Securities Corporation;
HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES,
Series 2005-EMX5; ABC CORPS 1-10; LLCS 1-10
_____

On Appeal from United States District Court
for the District of New Jersey
(D.N.J. No. 2-15-cv-07093)
District Judge: Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2018

Before: SMITH, Chief Judge, McKEE and FISHER, *Circuit Judges*.

(Filed: February 6, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

James Hartman appeals the District Court's order affirming the Bankruptcy Court's dismissal of his complaint against Wells Fargo Bank, N.A. d/b/a America's Servicing Company and U.S. Bank, N.A. (together, "Wells Fargo") for (i) declaratory relief barring Wells Fargo's foreclosure on his real property; and (ii) negligent misrepresentation. We will affirm.

I.

In September of 2005, Hartman and his wife (the "Homeowners") took out a $697,000 loan (the "Loan") secured by their real property in Chatham, New Jersey. They executed the Loan through a promissory note and mortgage (collectively, the "Mortgage Documents"). Years later, they entered into a loan modification agreement with Wells Fargo, the Loan's servicer, that capitalized the Loan's interest, but did not alter its October 1, 2035 maturity date.

Shortly after, the Homeowners failed to make their monthly payments. As a result, Wells Fargo issued a Notice of Intention to Foreclose on the property, thereby declaring default and accelerating the debt's date of maturity. When the Homeowners did not remedy the default, Wells Fargo filed suit to foreclose on the property. The Homeowners did not file a response to the complaint, but instead jointly filed for Chapter 13 bankruptcy.

2

Between 2009 and 2011, the Homeowners submitted two additional loan modification applications to Wells Fargo. Wells Fargo denied the first after the parties mediated and the Homeowners rejected Wells Fargo's forbearance agreement. It denied the second without negotiation, citing to then-active investor guidelines that limited debtors to only one capitalization during the loan's lifetime.

In October of 2013, the New Jersey Superior Court entered a Foreclosure Dismissal Order due to Wells Fargo's failure to prosecute. The Chancery Division later reinstated the foreclosure action on a six-month conditional basis, ordering that if Wells Fargo did not take action by December 12, 2014, its foreclosure case would be closed and Wells Fargo would have to commence a new action against the Homeowners. The six-month deadline passed without action by Wells Fargo.[1] Hartman then filed an individual petition for Chapter 13 bankruptcy and filed an adversary complaint (i) seeking a declaratory judgment that Wells Fargo is time-barred from commencing a foreclosure action against the property; and (ii) claiming negligent misrepresentation.

The Bankruptcy Court dismissed Hartman's complaint, and the District Court, in its appellate role, affirmed.

## II.

The Bankruptcy Court had jurisdiction over the adversary proceeding,[2] and the

---

[1] After the deadline passed, Wells Fargo moved for an extension of time, but Hartman filed his bankruptcy petition before a ruling was issued.

[2] *See* 28 U.S.C. §§ 157(b), 1334(b).

District Court had jurisdiction over the appeal of the Bankruptcy Court's final order.[3]

We have appellate jurisdiction to review the final order of the District Court,[4] which we

review *de novo*.[5]

## III.

The District Court correctly concluded that Wells Fargo had twenty years from the

date of the Homeowners' default to bring a foreclosure action and that Hartman failed to

plead a claim for negligent misrepresentation.

## A.

The applicable New Jersey statute imposes one of three deadlines for commencing

a foreclosure action: the earliest of (a) six years from the maturity date set forth in the

mortgage documents; (b) thirty-six years from the date the mortgage was recorded or

executed; or (c) twenty years from the date of default.[6]

Hartman argues that subsection (a) controls and that the statute of limitations

began to run on October 5, 2008, when Wells Fargo accelerated the Loan's maturity date

by demanding immediate repayment of the entire Loan. However, the District Court

found otherwise, imposing subsection (c)'s twenty-year statute of limitations, which

---

[3] *See id.* § 158(a).
[4] *See id.* §§ 158(d), 1291.
[5] *See Schlumberger Res. Mgmt. Servs. v. CellNet Data Sys.* (*In re CellNet Data Sys.*), 327 F.3d 242, 244 (3d Cir. 2003) ("We exercise plenary review of an order issued by a district court sitting as an appellate court in review of the bankruptcy court.").
[6] N.J.S.A. § 2A:50-56.1.

4

began to run on the date of the Homeowners' default. We agree with the District Court's conclusion.

Statutory interpretation begins with the text.[7] Courts are required to "give effect to every clause and word of a statute and be reluctant to treat statutory terms as mere surplusage."[8]

As the District Court highlighted,[9] subsection (a) includes a clause that provides that the maturity date set forth in the mortgage documents will apply unless "the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, [then] the action to foreclose shall not be commenced after six years from the extended date under the terms of the written instrument . . . ."[10] However, it does not reference an exception for accelerated maturity dates, though acceleration clauses are standard in mortgage documents[11] and addressed elsewhere in New Jersey law.[12]

---

[7] *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).

[8] *Free Speech Coalition, Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 539 (3d Cir. 2012) (citation omitted).

[9] The District Court relied heavily on the reasoning of a panel of this Court in *In re Washington*, 669 Fed. App'x 87 (3d Cir. 2016), a non-precedential opinion addressing this exact question.

[10] N.J.S.A. § 2A:50-56.l(a).

[11] *See Cent. Fed. Sav. and Loan Ass'n of Bridgeton v. Van Glahn*, 364 A.2d 558, 560 (N.J. Super. Ct. Ch. Div. 1976).

[12] *See, e.g.*, N.J.S.A. § 12A:3-118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.").

Nonetheless, Hartman maintains that subsection (a) applies to accelerated maturity dates just as it does extended maturity dates. He is incorrect; as the Mortgage Documents establish, October 1, 2035 is the date of maturity applicable to subsection (a). Our principles of statutory interpretation assume that when the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it . . . acts intentionally and purposely in the disparate inclusion or exclusion."[13] The legislature expressly provided for an adjustment of the statute of limitations where the maturity date had been extended, but did not include similar language to address accelerated maturity dates, though it could have. Therefore, it would be improper to now read such a provision into the text.

Because the foreclosure was triggered by the Homeowners' default, the District Court correctly concluded that subsection (c) controls.

B.

Hartman additionally argues that representatives of Wells Fargo committed negligent misrepresentation by allowing the Homeowners to pursue applications for loan modification between 2009 and 2011, even though Wells Fargo knew that a loan could only be capitalized once during its lifetime, which the Loan was in 2008. However, to state such a claim, Hartman must show that Wells Fargo owed the Homeowners a duty of

---

[13] *Barnhart*, 534 U.S. at 452 (citation omitted).

care that arose independently of their contractual relationship.[14]  Hartman fails to make

any such showing;[15] therefore, this claim was properly dismissed.

IV.

The District Court properly affirmed the Bankruptcy Court's order dismissing

Hartman's complaint.  We will therefore affirm.

---

[14] *See Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002).

[15] On appeal, Hartman argues that this Court should impose a balancing test to determine whether a lender owes a borrower a duty of care; however, he does not explain how or why any of the factors he suggests apply to his relationship with Wells Fargo.